IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

CHESTER L. BIRD, *et al.,*

        Plaintiffs,

vs.

STATE OF WYOMING, *et al.,*

        Defendant.

Case No.  22-CV-152-NDF

---

## OPINION AND ORDER ON MOTIONS TO DISMISS AND MOTION TO AMEND, AND
## REQUIRING PLAINTIFF CHESTER L. BIRD TO SHOW CAUSE WHY FURTHER FILING RESTRICTIONS SHOULD NOT BE IMPOSED AGAINST HIM

---

This matter is before the Court on motions to dismiss the amended complaint (ECF 36, 38, 42), a motion to amend the amended complaint (ECF 40), and issues the Court raises sua sponte.  Pro se Plaintiffs Chester L. Bird, Ryan A. Brown, and Richard B. Dague are inmates in the Wyoming Medium Correctional Institution ("WMCI").  They sue several defendants regarding alleged falsification and other inaccuracies in their medical records, particularly concerning the date they received the Janssen COVID-19 vaccine.  As follows, the Court grants the motions to dismiss, denies the motion to amend, and requires Plaintiff Chester Bird (but not his co-Plaintiffs) to show cause why the Court should not impose further filing restrictions against him.

I.    *Background*

Plaintiffs bring several claims arising from Defendant Melanie Martinez-Ellis – then a Health Services Administrator for Corizon, Inc. (a/k/a YesCare) at WMCI – allegedly falsifying their medical records to make it appear they received the Janssen COVID-19 vaccine twelve days later than they actually did.   Plaintiffs allege Martinez-Ellis administered the Janssen vaccine to them on March 19, 2019 – three days before information regarding that vaccine was first posted in the facility –but in retaliation for their filing grievances about that, wrote on their consent forms March 31, 2019 as the injection date. All of Plaintiffs' claims in this action arise from those alleged facts.

Plaintiffs allege the timing is important for two reasons.  First, they had an earlier case in this District, 21-cv-139-SWS, *Bird et al. v. Martinez-Ellis et al.,* alleging Martinez-Ellis and the Warden of WMCI, Michael Pacheco, violated their Fourteenth Amendment substantive due process rights.  They alleged that the patient consent forms disclosed only the Moderna and Pfizer vaccines, Martinez-Ellis did not inform them she was administering the Janssen vaccine instead, and no fact sheet was posted regarding that vaccine until March 22, 2019.  Plaintiffs alleged they would have declined the vaccine had they been aware that it was the Janssen vaccine.  They claimed a substantive due process right to informed consent in order to accept or decline medical treatment, that Martinez-Ellis violated that right when she administered the vaccine to them, and Warden Pacheco failed to train or supervise Martinez-Ellis regarding that right. They also brought state law claims for assault and battery.  Chief Judge Scott Skavdahl dismissed the federal claims in that action with prejudice for failure to state a claim and on Pacheco's part, qualified

immunity. *Bird v. Martinez-Ellis,* 582 F. Supp. 3d 909 (D. Wyo. 2022). Judge Skavdahl remanded the state law claims to state court. In the same decision, he also found the Plaintiffs' motion to file a second amended complaint was futile and denied it. Plaintiffs appealed the decision to the Tenth Circuit, and the appeal remains pending. They now claim (in both this action and by way of a pending motion for relief from the judgment in 21-cv-139, ECF 44) that dismissal was based in part on the falsified patient consent forms.

Secondly, and relatedly, Plaintiffs allege that at the time Martinez-Ellis administered the Janssen vaccine to them, it was generally known to have a risk of causing blood clotting in three out of a million persons. They allege that the inaccuracy of the injection date on their consent forms posed a serious risk of harm to them because healthcare professionals would not know they actually received the vaccines twelve days earlier than stated.

Plaintiffs filed their original, twenty-five page complaint in state court on June 3, 2022. ECF 2.[1] Therein, they brought eleven claims. Some of the claims were against Martinez-Ellis, each regarding her allegedly falsifying the injection date in response to Plaintiffs' filing grievances against her for not informing them that they were receiving the Janssen vaccine. Other claims were directed against Pacheco, a pseudonymous Corizon supervisor John or Jane Doe, Sergeant George Ross, Corizon, Inc., Kurt Johnson, M.D. (Corizon's Regional Director), and Stacie Koch, RN, CCHP (Corizon's Director of

---

[1] It is not particularly clear whether Plaintiffs paid a filing fee in state court, but they have not sought or been granted in forma pauperis status after the case came to this Court.

Operations-Wyoming).  The claims included 42 U.S.C. § 1983 claims.  Plaintiffs sought $5 million in compensatory damages and $5 million in punitive damages.  ECF 2.

The Court received the case by notice of removal on July 14, 2022.  All Defendants named in the original complaint moved to dismiss.  ECF 24, 26.  Plaintiffs then amended their complaint as of right under Rule 15.  ECF 33. The Court denied the first round of motions to dismiss without prejudice because they were mooted by the amended complaint. The amended complaint identifies the pseudonymous supervisor as Jaylene Cunningham, RN, RDON, acting Health Services Administrator for Corizon; expands one of the claims (Count Two) to reach all Defendants then-named; adds negligence claims against Cunningham and Corizon; adds a First Amendment claim against Sergeant Ross; notes Corizon, Inc. is now also known as YesCare Corp., (hereafter, "Corizon"); and increases the damages sought to respectively $7 million compensatory and $10 million punitive. Plaintiffs also add various allegations, resulting in an additional sixteen pages for a total 41 pages. ECF 33.

The amended complaint is the operative pleading and contains the following fourteen claims:

| Amended Complaint Count No. | Legal Theory | Defendant(s) |
|---|---|---|
| I | First Amendment retaliation in falsifying injection date in response to Plaintiffs' grievances. | Martinez-Ellis |
| II | Violation of Fourteenth Amendment substantive due process right to accurate medical records in | All Defendants: State of Wyoming, Daniel Shannon (Director of WDOC), Pacheco, Ross, Corizon, Dr. |

| | | respectively falsifying the date and not requiring it to be corrected. | Johnson, Koch, Martinez-Ellis, and Cunningham |
|---|---|---|---|
| III | | Eighth Amendment deliberate indifference to serious medical need in falsifying injection date. | Martinez-Ellis |
| IV | | Intentional infliction of emotional distress ("IIED") in falsifying the injection date. | Martinez-Ellis |
| V | | Negligence in falsifying injection date and thus failing to ensure medical records were accurate. | Martinez-Ellis |
| VI | | Negligence in failing to ensure accurate medical records. | Cunningham |
| VII | | Negligence in failing to ensure accurate medical records. | Corizon |
| VIII | | Negligence of healthcare provider under Wyoming Governmental Claims Act ("WGCA") in falsifying injection date as retaliation. | Martinez-Ellis |
| IX | | First Amendment denial of right to petition in refusing Plaintiffs access to the grievance process regarding Martinez-Ellis's falsification of the injection date. | Ross |
| X | | Respondeat superior or vicarious liability for actions of Martinez-Ellis | Corizon |
| XI | | Respondeat superior or vicarious liability for actions of Cunningham | Corizon |

| XII | 42 U.S.C. § 1983 negligent training and supervision of Martinez-Ellis to maintain accurate medical records.[2] | Corizon<br>Dr. Johnson<br>Koch |
| XIII | 42 U.S.C. § 1983 negligent training and supervision of Cunningham to maintain accurate medical records. | Corizon<br>Dr. Johnson<br>Koch |
| XIV | 42 U.S.C. § 1983 negligent training and supervision of Martinez-Ellis and Cunningham to maintain accurate medical records | Shannon<br>Pacheco |

The claims against the individual Defendants are in their individual capacities. ECF 33 ¶ 32.

The docket does not reflect a summons for Ms. Cunningham, nor a waiver of service from her. She is therefore not yet in the case. The Court reviews the claims against Ms. Cunningham pursuant to 28 U.S.C. § 1915A.

All Defendants except Cunningham filed a second round of motions to dismiss, now directed to the amended complaint. ECF 36, 38, 42. Plaintiffs did not respond to these motions, instead filing a motion to amend the amended complaint. ECF 40. The time for responses to the motions to dismiss has passed, and the briefing is complete on all of the pending motions.

II.    *Standard of Review*

At this initial phase, the Court must take all well-pleaded factual allegations as true and view those facts in the light most favorable to the plaintiff. *Robbins v. Oklahoma,* 519

---

[2] Counts XII, XIII, and XIV do not specify which constitutional right Plaintiffs invoke. As these claims specifically refer to a failure to train or supervise regarding the need to maintain accurate medical records, it appears these claims allege violations of the Fourteenth Amendment substantive due process right to accurate medical records.

F.3d 1242, 1247 (10th Cir. 2008). Dismissal is proper if, taking those facts as true, the plaintiff has failed to present a plausible right to relief. *Id. See also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins,* 519 F.3d at 1247 (quoting *Twombly,* 550 U.S. at 556). "A plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012) (internal citation and quotation marks omitted, citing *Twombly,* 550 U.S. at 570). "Thus, mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* at 1191 (quoting *Twombly,* 550 U.S. at 555). But "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556.

To state a claim – particularly a civil rights claim – the complaint must further specify: "1) what each defendant did to [plaintiff]; 2) when the defendant did it; 3) how the defendant's actions harmed [plaintiff]; and 4) what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents,* 492 F.3d 1158, 1163 (10th Cir. 2007).

These standards apply as well to the Court's initial screening of the claims against Cunningham under 28 U.S.C. § 1915A. That statute requires in relevant part that the Court to review as soon as practicable whether prisoners' claims are frivolous, malicious, or fail

to state a claim.[3]  This is the same standard as for Rule 12(b)(6) motions, although "the fact that a district court does not dismiss a complaint under § 1915A does not mean that the complaint will necessarily withstand a defendant's challenge to its plausibility under Rule 12(b)(6)."  *Garewal v. Sliz,* 611 F. App'x 926, 931 (10th Cir. 2015) (footnote omitted).

Meanwhile, Plaintiffs are pro se.  The Court accordingly construes their pleading liberally.  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam); *Garza v. Davis,* 596 F.3d 1198, 1201 n.2 (10th Cir. 2010).  If the Court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [the court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, … or his unfamiliarity with pleading requirements."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  But the Court cannot act as an advocate for pro se litigants.  *Id.*

III.   *Analysis*

A.   *Motions to Dismiss*

Plaintiffs did not respond to the motions to dismiss.  Under Local Rule 7.1, failure to file a response permits the Court to consider these motions conceded.  However, Plaintiffs' note in their motion to amend that they seek to amend in response to the motions

---

[3] Section 1915A regards prisoner claims (whether in forma pauperis or not) against governmental entities or employees of officers thereof.  While Cunningham is an employee of a private company (Corizon), Corizon acts pursuant to contract with WDOC (as alleged in the Amended Complaint) as its agent for healthcare to inmates including Plaintiffs.  Plaintiffs allege Cunningham was acting under color of state law in her role as acting Healthcare Services Administrator for Corizon at WMCI.  For purposes of Section 1915A, the Court sees no effective difference between an employee of a governmental entity and an employee of a contractor for a governmental entity acting under the color of state law.  *See, e.g., Wabuyabo v. Correct Care Solutions,* 723 F. App'x 642 (10th Cir. 2018) (affirming dismissal of prisoner claims against private healthcare contractor on initial review under 28 U.S.C. § 1915A).

to dismiss.   On dispositive motions, courts also prefer to rule on the merits and not procedural failures.  The Court accordingly considers the merits of the motions to dismiss.

*1.    Res Judicata*

All Defendants except Sergeant Ross argue that Plaintiffs' claims are barred by res judicata due to Chief Judge Skavdahl's dismissal with prejudice of their claims in 21-cv-139.  "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell,* 553 U.S. 880, 891 (2008).  "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* (editing and quotation marks omitted).

> [C]laim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated. If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. … Suits involve the same claim (or "cause of action") when they arise from the same transaction.

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.,* 140 S.Ct. 1589, 1594–95, 206 L. Ed. 2d 893 (2020) (quotation and editing marks omitted).

> We require defendants to prove three elements to prevail on this defense: (1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits. …In addition, even if these three elements are satisfied, there is an exception to the application of claim preclusion where the party resisting it did not have a full and fair opportunity to litigate the claim in the prior action.

*Johnson v. Spencer,* 950 F.3d 680, 708 (10th Cir. 2020) (quotation marks and citations omitted).

Here, there is no question that the January 2022 dismissal with prejudice of 21-cv-139 is a judgment on the merits. Judge Skavdahl addressed the merits of Plaintiffs' federal claims. *Bird v. Martinez-Ellis,* 582 F. Supp. 3d at 917–22. The identity of the cause of actions also is plain, other than Count IX against Sergeant Ross. Regardless that Plaintiffs focus here on the alleged falsification of the date in their consent forms, these claims arise from the same administration of vaccine as the claims in 21-cv-139. It is also plain that Plaintiffs here were also the plaintiffs in that case; they now sue a larger group of defendants than just Martinez-Ellis and Pacheco, but federal law of preclusion has long permitted different defendants to use the doctrine "defensively" (as Defendants do here) to bar a plaintiff who lost in the earlier action from relitigating the transaction against them too. *See, e.g., Blonder-Tongue Lab's, Inc. v. U. of Ill. Found.,* 402 U.S. 313, 323–25, 329, 349–50 (1971).[4]

However, Defendants do not brief whether the finality of the judgment in 21-cv-139 is affected for purposes of preclusion by Plaintiffs' pending appeal and motion for relief from the judgment. It appears the Tenth Circuit has not yet addressed this question for the federal common law. In *Ruyle v. Continental Oil Co.,* 44 F.3d 837, 845–46 (10th Cir. 1994), the Tenth Circuit held that a pending appeal did not affect the finality of an

---

[4] "Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.'" *Blonder-Tongue,* 402 U.S. at 329 (quoting *Kerotest Mfg. Co. v. C-O-Two Co.,* 342 U.S. 180, 185 (1952)).

Oklahoma Corporations Commission decision for purposes of preclusion. But the court did so based on an Oklahoma statute. *Id.* The Restatement (Second) of Judgments § 13 notes "[t]here have been differences of opinion" on this issue, the "better view" is that a pending appeal or motion for relief from judgment does not affect finality for purposes of preclusive effect. Restatement (2d) of Judgments § 13 cmt. f. But the same comment also states it may be appropriate to postpone deciding the issue until after the appeal or motion for relief is concluded. Another leading treatise is similar. Wright & Miller, 18A Fed. Prac. & Proc. Juris. § 4433 (3d ed.) (in federal preclusion law, it is an established rule that "a final judgment retains all of its res judicata consequences pending decision of the appeal," but also suggests that federal courts should postpone deciding preclusive effect until a pending appeal is decided).

In this case, given the strength of Defendants' other arguments for dismissal, the Court declines to reach whether the dismissal of 21-cv-139 should be treated as final for purposes of res judicata.

### 2. *Failure to Exhaust Administrative Remedies*

All Defendants except Ross next argue that Plaintiffs' federal claims are barred because they did not fully exhaust the available administrative remedies. "No action shall be brought with respect to prison conditions under section 1983 of this title … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C § 1997e(a) (part of the Prison Litigation Reform Act, "PLRA"). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This

has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock,* 549 U.S. 199, 204 (2007). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. However, administrative exhaustion is an affirmative defense and thus Defendants bear the burden of raising the issue. It is not a pleading requirement for prisoners' complaints. *Id.* at 212.

The "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system," but "it is the prison's requirements…that define the boundaries of proper exhaustion." *Jennings v. Dowling,* 642 F. App'x 908, 911 (10th Cir. 2016) (quoting *Jones,* 549 U.S. at 218). "[T]he doctrine of substantial compliance does not apply." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002). Accordingly, failure to complete the grievance process results in the claims being barred.

Here, pursuant to Wyoming Department of Corrections' Policy No. 3.100 the grievance process begins with a Form #320, Inmate Communication Form to the appropriate staff; if that does not resolve the issue, the inmate must submit a Form #321, Inmate Grievance Form to the grievance manager (here, Sergeant Ross). ECF 27-6 (exhibit to Defendants' first motion to dismiss) at 21. If the inmate is still not satisfied, the inmate files a Form #322, Inmate Grievance Appeal Form for the Warden to review the response to the grievance. *Id.* at 24. If they are still unsatisfied, the inmate files a second Form #322, this time addressed to the WDOC Director. *Id.* at 29. The grievance must "include a simple and straightforward summary of the incident or occurrence giving rise to the grievance or reason for the grievance and a requested grievance resolution or remedy." *Id.*

at 21 ¶ H.1.iv. Grievances must be submitted within thirty days of the conduct to be grieved. *Id.* at p. 21 ¶ H.1.iii.

The amended complaint alleges the grievance procedures Plaintiffs used regarding (1) the alleged falsification of their consent forms and (2) the inaccuracy of their medical records generally. In chronological order, Plaintiffs allege that "on June 18, 2021, Mr. Bird … submitted a WDOC *Inmate Communication Form* to the Medical Supervisor at the WMCI [Cunningham] regarding the inclusion of John Doe's medical records within Mr. Bird's medical records." ECF 33 ¶ 100. Cunningham responded that she was reviewing the records. "[O]n June 29, 2021, Mr. Bird submitted a follow up WDOC *Inmate Communication Form* to Ms. Cunningham regarding the issues with his medical records." *Id.* ¶ 104. "In a written response to Mr. Bird's June 29, 2021, WDOC *Inmate Communication Form,* Ms. Cunningham noted in writing that Corizon's HIPAA Department had been notified about the issue with the medical records and that Mr. Bird's record was being corrected." *Id.* ¶ 109. "[A]s of September 9, 2021, Mr. Bird's medical record still contained a four-page entry dated October 14, 2020, *i.e.* a 'Coronavirus (COVID-19) Screening Form 2020,' that actually belongs to John Doe." *Id.* ¶ 110.

"Upon confirming that the retrospective falsification of the injection date by Ms. Martinez was no accident or mistake, but rather a deliberate, intentional, purposeful, malicious, and criminal act, the Plaintiffs immediately submitted *Inmate Communication Forms* to the WMCI Medical Supervisor, Ms. Cunningham, on April 18, 2022, and April 20, 2022, demanding that their medical records be corrected … due to the misconduct of Ms. Martinez." *Id.* ¶ 122. "After not receiving any response to their respective *Inmate*

*Communication Forms* from Ms. Cunningham, the Plaintiffs each submitted *Inmate Grievance Forms* to Sergeant Ross on May 3, 2022, and May 5, 2022, also demanding that their medical records be corrected … due to the misconduct of Ms. Martinez." *Id.* ¶ 125. Ross allegedly returned the forms to Plaintiffs noting "the issue happened in 2021, or more than 30 days ago, and that the issue is in litigation at this time." *Id.* ¶ 126.

"Additionally, Director Shannon has deliberately, intentionally and purposefully fabricated and espoused lies about the unavailability of the 'manufacturer specific COVID-19 Vaccine Fact Sheet' for the Janssen Vaccine at the WMCI and that the *Patient Consent Form* was the same at all WDOC facilities." *Id.* ¶ 138. "[T]he WDOC grievance process operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates. The very fact that Director Shannon would knowingly, intentionally and purposefully lie within grievance appeal responses in the first instance indicates that the WDOC grievance process is an absolute dead end." *Id.* ¶¶ 148–49 (quotation marks omitted).

Thus, with respect to their claims alleging falsification of the vaccine consent forms, Plaintiffs do not allege they exhausted the grievance process. First, even if they were unaware of the alleged falsification until the January 2022 dismissal of 21-cv-139, they still did not file their grievance forms until April 2022: more than 30 days after they allege they first became aware. Although Plaintiffs allege they then undertook an investigation of the date on other inmates' consent forms, Plaintiffs do not allege why they waited until their complaint in that case was dismissed. The Court takes judicial notice that Plaintiffs filed their vaccine consent forms (with the March 31, 2021 date) in 21-cv-139 on

November 24, 2021. *See* 21-cv-139, ECF 15-2, 15-3, and 15-4. Even if their initial grievance forms on the alleged falsification were timely, Plaintiffs also did not complete either the first or second appeals required by the process. Rather, they allege the process is a dead-end and that Director Shannon lied in his decision of their earlier grievance appeal regarding the informed consent issue. These allegations lead to only one reasonable inference: that Plaintiffs did not complete the internal appeal process. Plaintiffs cannot avoid the PLRA bar by failing to avail themselves of the administrative procedures required in the WDOC policy. The federal claims regarding the alleged falsification of Plaintiffs' vaccine consent forms are barred. Those claims are Counts I, III, XII, and XIV.

Plaintiffs' claims alleging inaccuracy of their medical records in other ways are also barred. First, the amended complaint alleges only Mr. Bird filed a grievance on this issue. Plaintiffs Brown and Dague did not file any grievances on it. Even assuming they simply did not allege those facts, they also did not respond to Defendants' motion that raises this issue. Bird also does not allege that he completed the appeal process for this grievance. Again, the amended complaint's assertions that the process is a dead-end leave only the inference that Plaintiffs chose not to appeal the response (or lack thereof) to their grievances. Accordingly, Plaintiffs' federal claims alleging a violation of a right to accurate medical records are barred. These claims are Counts II and XIII.

Finally, Plaintiffs' Count IX is also barred for failure to exhaust. This claim asserts that Sergeant Ross denied Plaintiffs the right to use the grievance process regarding the alleged falsification of their vaccine consent forms. Plaintiffs do not allege that they filed or appealed grievances regarding this issue. Again, the allegations of the grievance process

being a dead-end, particularly because the Director allegedly lied in response to the "informed consent" appeal – lead to only one reasonable inference: that Plaintiffs did not complete the grievance and internal appeal process with regard to their claim against Sergeant Ross.  Count IX is accordingly barred.

In short, all of the federal claims are barred for failure to exhaust administrative remedies.

### 3.    *Plaintiffs' Federal Claims also Fail on the Merits*

Even if the claims were not barred, they do not state claims for relief upon which relief may be granted.  The First Amendment retaliation claim against Martinez-Ellis requires Plaintiffs to plausibly allege facts to support among other things "that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir. 2007).  "[T]rivial or de minimis injury will not support" the claim. *Id.* Plaintiffs allege there was a risk that healthcare providers could have relied on the wrong injection date, and that they suffered headaches, indigestion, and the like from the stress of discovering Martinez allegedly intentionally falsified the injection date.  But they do not allege any actual injury, and their physical complaints are de minimis.  They do not plausibly allege First Amendment retaliation against Martinez-Ellis.

Second, the Fourteenth Amendment substantive due process claim alleges that Plaintiffs, as inmates of a state prison receiving medical care therein have a right to accurate records of that treatment.

> Our prior cases have held the provision that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law," U.S. Const., Amdt. 14, § 1, to guarante[e] more than fair process ... and to cover a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them.

*Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 840 (1998) (internal quotation marks and citation omitted, quoting *inter alia Daniels v. Williams,* 474 U.S. 327, 331 (1986)).

"One strand of the substantive due process doctrine protects an individual's fundamental liberty interest, while the other protects against the exercise of governmental power that shocks the conscience." *Carrier v. Lundstedt,* No. 13-CV-02933-PAB-CBS, 2014 WL 8103198, at *5 (D. Colo. Dec. 22, 2014), *report and rec. adopted,* 2015 WL 1041835 (D. Colo. Mar. 4, 2015) (quoting *Seegmiller v. Laverkin City,* 528 F.3d 762, 767 (10th Cir. 2008)). The two strands "are not mutually exclusive, however. Courts should not unilaterally choose to consider only one or the other of the two strands. Both approaches may well be applied in any given case." *Seegmiller,* 528 F.3d at 769.

Plaintiffs do not appear to rely on the first strand, which historically regards the rights to bodily integrity and freedom from bodily restraint. *See, e.g., Reno v. Flores,* 507 U.S. 292 (1993); *Foucha v. Louisiana,* 504 U. S. 71, 80 (1992), and *Washington v. Harper,* 494 U.S. 210 (1990). Each of those cases involved purposeful confinement of or intrusion into the body by the governmental actor. This leaves the second strand. This type of claim requires "an abuse of executive power so clearly unjustified by any legitimate objective of [the governmental actor] ... as to be barred by the Fourteenth Amendment." *Lewis,* 523 U.S. at 840. The Court has "always been reluctant to expand the concept of substantive due process." *Id.* at 842. It is "intended to secure the individual from the arbitrary exercise

of the powers of government, unrestrained by the established principles of private right and distributive justice." *Id.* at 845 (quoting *Hurtado v. California,* 110 U.S. 516, 527 (1884)).

"Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense, ... thereby recognizing the point made in different circumstances by Chief Justice Marshall, that it is a constitution we are expounding." *Id.* at 846 (internal quotation marks omitted). "[T]he cognizable level of executive abuse of power [actionable for substantive due process is] that which shocks the conscience." *Id.* at 846. "While the measure of what is conscience shocking is no calibrated yard stick, it does, as Judge Friendly put it, 'poin[t] the way.'" *Id.* at 847 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied,* 414 U.S. 1033 (1973)).

> [C]onscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability. Thus, we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.

*Lewis,* 523 U.S. at 848. Negligence is categorically below substantive due process protection. *Id.* at 849. "It is ... behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.*

The question is whether the defendant's conduct "shocks the conscience of federal judges, not juries. Whether specific conduct shocks the conscience is a question of law for the court." *Carrier,* 2014 WL 8103198, at *5 (internal citation omitted, citing *Graves v.*

*Thomas,* 450 F.3d 1215, 1220 (10th Cir. 2006)).  The Court must also "bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety."  *Hernandez v. Ridley,* 734 F.3d 1254, 1261 (10th Cir. 2013).

Here, Plaintiffs allege their medical records are inaccurate due to other inmates' treatment being mistakenly noted in the wrong files, errors in the notes of treatment they received, and in Bird's instance errors in diagnosis of his dental issue.  The only deliberate conduct they assert is that of Martinez-Ellis allegedly falsifying the date on their vaccine consent forms.  All other Defendants simply refused to step in and change the information in Plaintiffs' medical records or to require their subordinates to do so.  None of the alleged conduct rises to a level that shocks the conscience.  Assuming as Plaintiffs allege that Martinez-Ellis intentionally wrote a later date on their consent forms because they had filed grievances regarding the lack of informed consent to the Janssen vaccine, this does not infer "conduct intended to injure" Plaintiffs.  At the time Plaintiffs allege Martinez-Ellis did so – April 10, 2021 – three weeks had gone by and Plaintiffs do not allege they had any side effects from the vaccine.  Rather, the allegation supports only conduct intended to avoid Plaintiffs' grievances and the possibility of litigation.  Accordingly, Count II fails to state a claim against any Defendant.

The Eighth Amendment claim against Martinez-Ellis (Count III) requires Plaintiffs to plausibly allege deliberate indifference to a serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104–105 (1976).

> To state a cognizable Eighth Amendment claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." [*Estelle*, 429 U.S.] at 106... The deliberate indifference test involves an objective and a subjective component. …The objective component requires the plaintiff to allege the deprivation at issue was sufficiently serious. … That is, the defendant's actions "must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan,* 511 U.S. 825, 834 … (1994) (quotation omitted). The subjective component requires the prisoner to allege the official was deliberately indifferent to a serious medical need. *Id.* A plaintiff sufficiently alleges a culpable mindset when the facts alleged show a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

*Walker v. Mohiuddin,* 947 F.3d 1244, 1249 (10th Cir. 2020).

Here, Plaintiffs do not allege actions or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. As noted above, headaches, indigestion, and the like are de minimis harms. Three weeks had passed since they received the vaccine and they do not allege they have experienced any side effects from the vaccine. Given these fact allegations, they fail to plausibly allege that Martinez-Ellis falsified the injection dates knowing of an excessive risk to their health or safety in doing so. Count III accordingly fails to state a claim.

The federal claims asserting supervisory and entity liability for Martinez and Cunningham's actions – Cunningham allegedly failing to correct the inaccuracies in Bird's medical records – likewise fail to state claims. As to the State, Director Shannon, Warden Pacheco, Sergeant Ross, and Ms. Koch, Plaintiffs fail to plausibly allege personal

participation by these Defendants.  Supervisors are not liable in Section 1983 actions unless they personally participate in the alleged constitutional harm with the requisite state of mind.  *Dodds v. Richardson,* 614 F.3d 1185, 1198 (10th Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)).  *See also Walker,* 947 F.3d at 1250 (claim failed for lack of personal involvement of the defendant); *Bird v. Lampert,* 839 F. App'x 218, 222 (10th Cir. 2020). Even if Plaintiffs alleged any of these Defendants were personally involved (as supervisors or final policy makers) in either Martinez-Ellis's alleged falsification or the inaccuracy of Plaintiffs' medical records, Plaintiffs do not allege facts to support they acted with deliberate indifference to an excessive risk to Plaintiffs' health or safety.  Counts XII, XIII and XIV fail to state claims.

Finally, Count IX against Sergeant Ross fails because "his mere response and denial of [Plaintiffs'] grievance[s] are insufficient to establish the requisite personal participation under § 1983."  *Requena v. Roberts,* 893 F.3d 1195, 1216 (10th Cir. 2018).  Plaintiffs allege Ross denied them access to the grievance process, but the only conduct they identify for this claim is his denial of their grievances.[5]  Accordingly, Count IX fails to state a claim.

4.    *State Law Claims*

Defendants seek dismissal with prejudice of Plaintiffs' state law claims as well.  The Court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) [of Section 1367] if … the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  "The Supreme Court has encouraged the practice of

---

[5] It also bears noting that the proposed second amended complaint would drop Sergeant Ross as a defendant.

dismissing state claims or remanding them to state court when the federal claims to which they are supplemental have dropped out before trial." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.,* 956 F.3d 1228, 1238 (10th Cir. 2020).  The Tenth Circuit "has followed suit when the claims over which the district court had original jurisdiction are dismissed on pretrial motion." *Id.* This is because "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988)).

In this case, the Court declines to retain jurisdiction of the state law claims and remands them to the Eighth Judicial District Court, Goshen County.  The case has been in this Court for only three months.  Although the Court had to invest significant resources to address the federal claims, it has not invested resources in the state law claims.  Defendants assert that Plaintiffs would not be able to pursue this action in state court either -- because they have improperly split these claims from the claims they bring in Civil Action No. 2021-00049 (also in the Eighth Judicial District).  But the parties will be able to bring that issue before the state court, which is the most appropriate tribunal to determine that question.

### B.    Motion to Amend

Plaintiffs move for leave to file a second amended complaint.  ECF 40.  Leave to amend should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Tenth Circuit has adopted a liberal standard when determining whether leave to amend a

pleading should be given. *Martinez v. Cornell Corr. of Tex., Inc.,* 229 F.R.D. 236, 238 (D.N.M. 2005) (citing *Calderon v. Kan. Dep't of Soc. and Rehab. Servs.,* 181 F.3d 1180, 1185-86 (10th Cir. 1999)). This liberal policy of granting motions to amend reinforces the basic principle that a plaintiff's claim is best decided on its merits, rather than upon procedural niceties. *Id.; Foman v. Davis,* 371 U.S. 178, 181–82 (1962). "In light of our liberalized pleading rules, plaintiffs generally should not be prevented from pursuing a claim merely because the claim did not appear in the initial complaint." *Alpenglow Botanicals, LLC v. United States,* 894 F.3d 1187, 1203 (10th Cir. 2018), *cert. denied,* 139 S. Ct. 2745 (2019) (internal quotation marks omitted).

Notwithstanding the liberal amendment policy of the Tenth Circuit, a court may deny leave to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman,* 371 U.S. at 182. "The non-moving party bears the burden of showing that the proposed amendment is sought in bad faith, that it is futile, or that it would cause substantial prejudice, undue delay or injustice." *Corp. Stock Transfer, Inc. v. AE Biofuels, Inc.,* 663 F. Supp. 2d 1056, 1061 (D. Colo. 2009) (internal quotations and citations omitted). The decision of granting leave to amend is vested soundly within the discretion of the trial court. *Alpenglow Botanicals,* 894 F.3d at 1203.

Plaintiffs explain the proposed amendment would:

(1) Reflect email correspondence *et cetera* that WDOC or the Wyoming Department of Health produced shortly after Plaintiffs filed the first amended complaint. Plaintiffs

believe the correspondence shows that Corizon staff knew ahead of time that they were going to administer the Janssen vaccine, that Janssen consent forms were available at the time, and Director Shannon lied in his response(s) to grievance appeals regarding Plaintiffs having been given the Janssen vaccine.

(2) Address the Defendants' argument that they failed to exhaust their administrative remedies by alleging that Plaintiffs believe the grievance process is a dead-end because Director Shannon lied in deciding their grievance appeals on the informed consent issue.

(3) Address that Martinez-Ellis, Pacheco, and their counsel of record "played rather fast and loose with the 'judicial machinery'" in a filing in 21-cv-139, lying by omission to Judge Skavdahl, and that Judge Skavdahl erred in his order denying the motion to alter or amend judgment.

Finally, although Plaintiffs did not note it in their motion, the proposed second amended complaint would also add a new defendant (Deputy Warden Marlena McInnis) in place of the Jane Doe defendant and would drop Sergeant Ross as a defendant. Ross therefore does not oppose the amendment. He instead requests that if the Court allows the amendment that it also issue an order for clarity's sake noting that he is dropped as a defendant. ECF 42.

Plaintiffs' proposed amendment would be futile. As to category one, Plaintiffs already allege these facts on information and belief in the amended complaint. The details of the emails (of which there appear to be only two in the proposed amendment) do not add anything significant to whether Plaintiffs fail to state claims for relief. Likewise, for

24

category two, Plaintiffs already allege those assertions. ECF 33 ¶ 149.   In the Court's review (which included generating a redline), Plaintiffs do not propose to add any new allegations relating to administrative exhaustion. And category three is a matter to take up with Judge Skavdahl in 21-cv-139, if at all.   It also appears that Plaintiffs propose to omit many of the amended complaint's allegations about this issue.   The proposed second amended complaint does not appear to propose any new allegations about 21-cv-139 or filings therein.

Because none of the proposed amendments cure the lack of administrative exhaustion or the failure to plausibly allege elements of the claims, the proposed second amended complaint would be futile.   Plaintiffs' motion to amend (ECF 40) is accordingly DENIED.   Defendant Ross's alternative motion to dismiss (ECF 42) is terminated as moot, as the Court is granting his first motion to dismiss.

### C.    Show Cause Order as to Plaintiff Chester Bird

The court sua sponte takes judicial notice of several facts from its records and publicly available records of the Tenth Circuit Court of Appeals and the Wyoming Supreme Court.

Since his conviction in 1994, Mr. Bird has been a plaintiff or petitioner in 25 civil cases in this Court, not counting the present one which is here on removal.[6]   Twelve were civil actions and thirteen were habeas petitions.   Bird is subject to what is known as the

---

[6] The Court's records group Mr. Bird's cases by Chester Loyde Bird as a plaintiff in 94-cv-233, 94-cv-248, 95-cv-15, 95-cv-122, and 95-cv-184; Chester L. Bird as a plaintiff in 17-cv-87, 17-cv-198, 20-cv-26, 20-cv-37, 20-cv-42, 20-cv-49, and 21-cv-139; Chester Loyde Bird as a petitioner in 94-cv-264, 95-cv-44, 95-cv-216, 96-cv-173, and 98-cv-183; and Chester L. Bird as a petitioner in 08-cv-200, 09-cv-133, 15-cv-153, 16-cv-320, 17-cv-27, 17-cv-53, 17-cv-111 and 22-cv-174.

"three strikes" rule of 28 U.S.C. § 1915(g).  *See, e.g., Bird v. Lampert,* 17-cv-198-ABJ,

ECF 6 (D. Wyo. Nov. 30, 2017) (noting that Bird reached his allotted three strikes in cases

94-cv-233-D, 95-cv-015-B, and 94-cv-248-J).[7]  Thus, Bird has long been subject to Section

1915(g)'s filing restrictions, in that he cannot file in forma pauperis ("IFP") unless he

makes "specific, credible allegations of imminent danger of serious physical harm." *Hafed

v. Federal Bureau of Prisons,* 635 F.3d 1172, 1179 (10th Cir. 2011).[8]  He also has long

been subject to 28 U.S.C. § 2244's requirement of pre-approval from the Tenth Circuit for

any second or successive habeas petitions.

But the existing filing restrictions have had little to no effect on Bird's filing of non-

meritorious civil actions in this Court. He has never obtained a judgment in his favor in

any civil action in this court.  To the contrary, ten of Bird's twelve prior civil actions in

this Court have been dismissed at the Rule 12 phase – most of them specifically as

"frivolous, malicious, or [for] fail[ing] to state a claim upon which relief may be granted,"

the criteria of Section 1915(g).[9]  Bird's civil rights claims have survived Rule 12 motions

---

[7] The referenced actions of 1994 and 1995 predate the adoption of Section 1915(g), but Bird has also accrued many other strikes against him under § 1915(g).

[8] In 95-cv-122, the docket also reflects that the Court permitted Bird to proceed IFP but required any further proceedings must be specifically authorized in advance by the Court (ECF 4, order of June 23, 1995).

[9] Bird's civil rights actions in this Court dismissed **with prejudice** or found frivolous or failing to state a claim: 94-cv-233, 94-cv-248, 95-cv-15; *Bird v. Wyoming Supreme Court,* 95-cv-122-ABJ; *Bird v. Easton,* 20-cv-26-SWS, ECF 15 (Order of September 4, 2020, granting motion to dismiss based on qualified immunity), *aff'd,* No. 20-8061, 859 F. App'x 299 (Mem) (10th Cir. June 11, 2021); *Bird v. Wyoming Attorney General,* 20-cv-37-F, ECF 9 (Order of June 2, 2020, granting motion to dismiss based on res judicata), *aff'd sub nom., Bird v. Hill,* No. 20-8035, 857 F. App'x 434 (Mem) (10th Cir. May 21, 2021); *Bird v. Martinez-Ellis,* 21-cv-139-SWS, ECF 28 (Order of January 31, 2022, granting motion to dismiss for failure to state a claim and based on qualified immunity), *appeal pending.*

Bird's civil rights actions in this Court dismissed **without prejudice**: 95-cv-184, dismissed without prejudice and denied IFP; 17-cv-198-J, dismissed on Bird's motion after his motion for IFP was denied; 20-cv-42, *Bird v. Wyoming Attorney General,* dismissed without prejudice for lack of standing.

in only two cases. In both instances, his claims were denied on summary judgment.[10] And

each of Bird's thirteen habeas petitions in this Court were either dismissed or denied.[11]

Bird has also appealed, sought certificates of appealability, or sought permission to

file a second or successive habeas petition at least fifteen times from the Tenth Circuit.[12]

Westlaw also reflects that Bird has obtained seven opinions from the Wyoming Supreme

Court – not including his appeal from his criminal convictions – and none of those opinions

appear to rule even partially in his favor.[13]  In addition, some of the published cases reflect

that at times WDOC has transferred Bird to other states for incarceration.  The Court has

not attempted to track whether Bird also filed civil actions or habeas petitions outside of

this Court, the Tenth Circuit and the Wyoming Supreme Court.

---

[10] *See* 17-cv-87-SWS, (ECF 306, judgment; ECF 318, dismissing state law claim without prejudice); 20-cv-49-SWS, *Bird v. Moss* (ECF 223, order granting summary judgment to the defendant).

[11] Bird's habeas petitions in this Court are: 94-cv-264-B, dismissed for failure to exhaust state court remedies; 95-cv-44-B, dismissed for failure to exhaust state court remedies; 95-cv-216-B, dismissed (reason not stated in docket entry); 96-cv-173-B, dismissed for failure to exhaust state court remedies; 98-cv-183-D, denied, *aff'd, Bird v. Everett,* 215 F.3d 1336 (Table), 2000 WL 717089 (10th Cir. June 2, 2020); 08-cv-200-D, denied, cert. of appealability ("COA") denied, *Bird v. LeMaitre,* 371 F. App'x 938 (10th Cir. 2010); 09-cv-133-B, denied, COA denied, *Bird v. Wilson,* 371 F. App'x 941 (10th Cir. 2010); 15-cv-153-F, dismissed, COA denied, *Bird v. Wilson,* 647 F. App'x 891 (10th Cir. 2016); 16-cv-320-F, dismissed without prejudice, COA denied, *Bird v. Wyoming Atty. Gen.,* 779 F. App'x 546 (10th Cir. 2019); 17-cv-27-F, dismissed without prejudice, COA denied, *Bird v. Wyo. Dept. of Corr. State Pen. Warden,* 693 F. App'x 762 (10th Cir. 2017); 17-cv-53-J, dismissed with prejudice, COA denied, *Bird v. Pacheco,* 729 F. App'x 627 (10th Cir. 2018); 17-cv-111-F, dismissed without prejudice, COA denied, *Bird v. Wyo. Dept. of Corr. State Pen. Warden,* 697 F. App'x 613 (10th Cir. 2017); 22-cv-74, dismissed without prejudice.

[12] As of this filing date, Westlaw reflects fifteen Chester Bird rulings from the Tenth Circuit.  Only one of those decisions reversed the district court's decision in part, and then the partial reversal was only to require remand of a state law claim to state court (or dismissal without prejudice) instead of dismissing the claim as duplicative.  *Bird v. Lampert,* 839 F. App'x 218 (10th Cir. Dec. 15, 2020).

[13] *See Bird v. State,* 939 P.2d 735 (Wyo. 1997) (second motion to withdraw guilty pleas); *Bird v. Rozier,* 948 P.2d 888 (Wyo. 1997) (civil action); *Bird v. State,* 39 P.3d 430 (Wyo. 2002) (motion to correct sentence); *Bird v. State,* 356 P.3d 264 (Wyo. 2015) (second motion to correct sentence); *Bird v. Wyo. Bd. of Parole,* 382 P.3d 56 (Wyo. 2016) (civil action); *Bird v. Lampert,* 441 P.3d 850 (Wyo. 2019) (civil action); *Bird v. Lampert,* 479 P.3d 382 (Wyo. 2021) (civil action).

"The right of access to the courts is neither absolute nor unconditional." *Crownhart v. Buck,* 20-1410, 2021 WL 4595169, at *3 (10th Cir. Oct. 6, 2021) (quoting *Winslow v. Hunter (In re Winslow),* 17 F.3d 314, 315 (10th Cir. 1994) (per curiam)). "Federal courts have the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions under appropriate circumstances." *Id.* (quoting *Ysais v. Richardson,* 603 F.3d 1175, 1180 (10th Cir. 2010)). *See also Jiron v. Colorado,* 343 F. App'x 296, 297 (10th Cir. 2009).

> Filing restrictions are appropriate where the litigant's lengthy and abusive history is set forth; the court provides guidelines as to what the litigant may do to obtain its permission to file an action; and the litigant receives notice and an opportunity to oppose the court's order before it is implemented.

*Crownhart,* 2021 WL 4595169, at *3 (10th Cir. Oct. 6, 2021). The Court also has authority in appropriate circumstances to impose monetary sanctions. *See, e.g., Van Sickle v. Holloway,* 791 F.2d 1431, 1437 (10th Cir. 1986) (imposing monetary sanction and filing restriction).

Although "litigiousness alone is not a sufficient reason to restrict access to the court," "abusive and repetitive filings" that strain the resources of the Court will support further filing restrictions. *In re Winslow,* 17 F.3d at 315. For instance, in *Jiron,* the pro se prisoner had filed nineteen civil actions in the district court when it imposed filing restrictions requiring him to obtain the court's prior approval – based on information required in the sanction order – before filing further pro se civil complaints. The Tenth Circuit found no error when the district court dismissed the plaintiff's unapproved pro se action.   In *Winslow,* the Tenth Circuit found that where pro se litigants brought

substantially similar allegations in seventeen actions and ignored admonitions to follow the court's local rules, it was appropriate to restrict the litigants from filing further pro se actions unless they first obtained the court's approval. *Winslow*, 17 F.3d at 316.   In *Crownhart*, the pro se litigant's abusive filings that led the district court to prohibit any further pro se proceedings included eighteen habeas petitions and seventeen complaints. *Crownhart v. Suthers,* 531 F. App'x 906 (10th Cir. 2013).  The filing restrictions applied to both habeas petitions and civil rights actions.

In this case, Bird has filed in this Court ten civil actions that failed on Rule 12 motions (not counting the present case), two civil actions failing on summary judgment, and thirteen failed habeas petitions.  Again, none of his civil proceedings in this Court have resulted in a judgment even partially in his favor.  Despite orders of this Court making him well aware of the requirement to exhaust state court remedies before seeking habeas relief in this Court, he continued to file habeas petitions that did not meet that requirement. Despite being made fully aware that res judicata includes any claims that could have been brought in a prior action (*see, e.g.*, 20-cv-37), the present case demonstrates that he continues to file multiple actions (whether in this Court or state court) arising from the same transaction.  And despite being likewise fully aware that Section 1983 claims require personal participation of the individual defendant (see above), Bird continues to sue state prison officials and Corizon employees without plausibly alleging their personal involvement and requisite level of intent.  His meritless civil actions and habeas petitions have unnecessarily strained the resources of this Court.

Bird has two weeks from the filing of this order in which to SHOW CAUSE why this Court should not (1) find he has demonstrated a pattern of litigation activity that is manifestly abusive and (2) impose further filing restrictions prohibiting him from filing any further pro se litigation – civil actions or habeas proceedings – absent the Court's prior approval. The Court proposes to include in the filing restrictions that it will only approve further pro se civil actions by Bird if he makes (a) specific, credible allegations of imminent danger of serious physical harm; (b) specific, credible allegations that he has exhausted all available administrative remedies; and (c) a notarized affidavit that the complaint complies with Federal Rule of Civil Procedure 11. The Court will only approve further pro se habeas petitions if Bird presents an order from the Tenth Circuit under 28 U.S.C. § 2244 permitting him to file a second or successive petition, pays the filing fee, uses a Court-approved form of habeas petition, alleges all facts necessary to determine whether the petition is timely under 28 U.S.C. § 2244(d), and includes a notarized affidavit that the petition is not presented for any improper purpose, including harassment. Any complaints or petitions that do not meet these requirements will be summarily dismissed.

*IV.    Conclusion*

Consistent with the foregoing, the Court GRANTS the Defendants' motions to dismiss (ECF 36 and 38). Defendant Ross's alternative motion (ECF 42) is terminated as moot. The Court finds on initial review that the federal claims against Defendant Cunningham fail to state a claim. All of Plaintiffs' federal law claims against all Defendants (Counts I, II, III, IX, XII, XIII and XIV) are DISMISSED WITH

PREJUDICE.[14]  Plaintiffs' state law claims (Counts IV, V, VI, VII, VIII, X, and XI) are remanded to the Eighth Judicial District Court, Goshen County.

Plaintiffs' motion to amend (ECF 40) is DENIED.

Plaintiff Bird shall SHOW CAUSE within two weeks of the filing of this order why the Court should not make the findings and impose the filing restrictions stated in Section III.C.  Judgment shall not enter pending the Court's resolution of this show cause order.

Dated this 20th day of October, 2022.

_____
NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE

---

[14] The Court may sua sponte dismiss a pro se complaint without leave to amend "when it is 'patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

31