

FILED

1:12 pm, 12/8/22

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CHESTER L. BIRD, *et al.,*<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF WYOMING, *et al.*,<br><br>Defendant. | Case No. 22-CV-152-NDF |

OPINION AND ORDER ON PLAINTIFFS' MOTION (ECF 50)
FOR RELIEF FROM ORDER

On November 8, 2022, pro se Plaintiffs Chester L. Bird, Ryan A. Brown, and Richard B. Dague's filed a motion (ECF 50) for relief from the October 20, 2022 opinion and order dismissing their amended complaint and denying leave to further amend ("October 20 Order").[1] Plaintiffs seek relief under Federal Rule of Civil Procedure 60(b) and seek reconsideration, arguing errors in law and in understanding their position or fact allegations. Defendants oppose. ECF 54, 55. Plaintiffs filed a reply. ECF 58. For the following reasons, the Court denies the motion.

I.  *Background*

The Court assumes familiarity with the October 20 Order, wherein the Court summarizes Plaintiffs' allegations in detail. In a nutshell, Plaintiffs' claims relate to the

---

[1] The October 20 Order also required Bird to show cause why the Court should not impose further filing restrictions against him. Bird addresses that aspect of the order by separate motion. ECF 53.

vaccination dates on their consent forms for a COVID-19 vaccine in March 2021[2] and the accuracy of their medical records in general. They allege that Defendant Melanie Martinez-Ellis, RN – then a Health Services Administrator for Corizon, Inc. (a/k/a YesCare) at the Wyoming Medium Correctional Institute ("WMCI") – allegedly falsified their vaccination dates on April 10, 2021 to make it appear they gave informed consent to the Janssen COVID-19 vaccine when it was not listed on their consent forms. They assert she did so because they filed grievances against her for giving them the Janssen vaccine before its information sheet was posted. They further allege that as of March 19, 2021, this vaccine was known to have a risk of blood clotting in three out of a million persons.

The amended complaint contains fourteen claims. Defendants moved to dismiss, and Plaintiffs did not respond. They instead moved to amend again. ECF 40. The October 20 Order dismissed all federal law claims with prejudice and remanded the state law claims.

## II.     Standards of Review

Plaintiffs frame their motion as one under Rule 60(b)(1), (3) and (6), and more generally as a motion to reconsider under the standards for Rule 59(e) motions in *Servants of The Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000). Rule 60(b) in relevant part provides for relief from a final judgment or order because of (1) mistake, (3) fraud, misrepresentation or misconduct by an opposing party, and (6) any other reason justifying relief. Fed. R. Civ. P. 60(b)(1), (3), (6). Rule 60(b)(1) includes mistakes of law. *See, e.g., Kemp v. United States,* 142 S. Ct. 1856, 1861-62, 213 L. Ed. 2d 90 (2022). Rule 60(b)(3)

---

[2] The background section of the October 20 Order had a typographical error referring to the vaccination as March 19, 2019. Plaintiffs allege it was March 19, 2021.

requires Plaintiffs to "show clear and convincing proof of fraud, misrepresentation, or misconduct. Moreover, the challenged behavior must substantially have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial." *Zurich N.A. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1290 (10th Cir. 2005) (internal citations and quotation marks omitted). Rule 60(b)(6) relief is only available when none of the other subsections apply; it is extraordinary and limited to exceptional circumstances. *Kemp*, 142 S. Ct. at 1861. "Rule 60(b) is not available to allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument." *Yarbary v. Martin,* 643 F. App'x 813, 817 (10th Cir. 2016) (quoting *FDIC v. United Pac. Ins. Co.,* 152 F.3d 1266, 1272 (10th Cir. 1998)).

Meanwhile, for Rule 59(e) motions to alter or amend judgments, "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of The Paraclete,* 204 F.3d at 1012. It is inappropriate to "merely advance[] new arguments, or supporting facts which were available at the time of the original motion." *Id.*

In this case, Rule 60(b) is largely unnecessary to Plaintiffs' motion, except to raise their argument of misrepresentation or misconduct by Defendants. Plaintiffs' other arguments fit under either the standards of Rule 60(b)(1) mistakes of law or Rule 59(e) clear errors, but any distinction in the legal standards for those rules is not dispositive here.

And Plaintiffs do not raise any grounds for relief that are not already covered by Rule 60(b)(1) or (3), so they cannot turn to Rule 60(b)(6) for relief. Plaintiffs filed the motion within the twenty-eight day time period allowed for a Rule 59(e) motion, and "a motion to reconsider filed within ten [now 28] days after entry of judgment is considered a Fed. R. Civ. P. 59(e) motion." *Servants of the Paraclete,* 204 F.3d at 1012. Accordingly, the Court addresses Plaintiffs' argument of misrepresentation or misconduct under Rule 60(b)(3), but the rest of the motion it treats as one for reconsideration under Rule 59(e).

Plaintiffs remain pro se. The Court accordingly construes their filings liberally.

III.   *Analysis*

    A.   *Failure to Exhaust Administrative Remedies*

Plaintiffs first argue that there were no administrative procedures available to them because the WDOC grievance process requires filing the first grievance form within ten days of the conduct at issue. Plaintiffs allege Martinez-Ellis did not falsify the date on their consent forms until more than ten days had passed from their vaccination dates. Thus, they argue, they could not comply with the grievance process, and it was unavailable to them. ECF 50 at 1-3. They further argue that Defendants' pursuit of the exhaustion argument is an intentional misrepresentation or misconduct warranting relief under Rule 60(b)(3).

The first problem with these arguments is that Plaintiffs could have made them in a response to the motions to dismiss. Plaintiffs chose to not respond and instead sought only to amend the amended complaint. They cannot raise these arguments now, and the Court could stop here. Here, the Court will reach the merits of Plaintiffs' exhaustion arguments

to address their assertion of misrepresentation or misconduct by Defendants through their counsel, which as will be seen, is unfounded.

Plaintiffs' exhaustion argument fails on the merits. Plaintiffs have not shown the grievance process was unavailable to them. "No action shall be brought with respect to prison conditions under section 1983 of this title … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C § 1997e(a) (part of the Prison Litigation Reform Act, "PLRA"). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court. … However, … [i]t is not a pleading requirement for prisoners' complaints." *Jones v. Bock,* 549 U.S. 199, 211–12 (2007).

When the complaint's allegations affirmatively show that the prisoner did not exhaust administrative remedies that were available to him, dismissal is nonetheless appropriate. *See, e.g., Williams v. Sirmon,* 350 F. App'x 294, 299–300 (10th Cir. 2009). "[D]etermin[ing] whether an inmate has exhausted his administrative remedies requires an understanding of the remedies available and thus likely would require information from the defendant as well as the inmate." *Aquilar–Avellaveda v. Terrell,* 478 F.3d 1223, 1225–26 (10th Cir. 2007). The Court must also "ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Id.*

In this case, Plaintiffs make numerous allegations regarding what they did to comply with the WDOC grievance process. They allege the forms they submitted and received (or did not receive). ECF 33 ¶¶ 71-74, 78-79, 100-04, 109, 122-23, 125-26, 129. They cite and quote from the "WDOC grievance policy" to allege what the Defendants were

5

supposed to do in response to their grievances. ECF 33 ¶¶ 75, 130. Defendants then attached that policy (WDOC Policy No. 3.100) as an exhibit to their motion to dismiss. ECF 27-6.[3]

Plaintiffs' allegations affirmatively show that they did not follow the complete grievance process for any of their federal claims. October 20 Order at 12-14. Specifically, they did not file their grievances regarding the falsified vaccination dates within 30 days of learning of the falsification. Although Plaintiffs now assert that the event at issue is the vaccination on March 19, 2021 – and the falsification occurred more than ten days later and was thus too late for them to file a grievance under Policy 3.100(2)(i) – this is not what Plaintiffs allege. They allege the April 10, 2021 falsification of the vaccination date as the event at issue. They filed their completed consent forms in November 2021 (in 21-cv-139-SWS), so they must have received the falsified consent forms before then. Plaintiffs do not argue any impediment to filing a grievance within ten days of receiving their completed consent forms.

In any case, the Court gave Plaintiffs the benefit of the doubt regarding when they should have realized the date on the form was wrong, and concluded that they still did not timely file grievances on the issue. Even if Plaintiffs did not have reason to know of the dates on the forms until January 2022, they still waited until April 2022 to file their

---

[3] The Court properly considered WDOC Policy 3.100 without converting to summary judgment as a document central to and referenced in the amended complaint whose authenticity Plaintiffs do not dispute. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing *Jacobsen v. Desert Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002)). Plaintiffs for instance rely on it to allege Martinez-Ellis was aware of their grievances, as pertinent to deliberate indifference.

grievances. This was well over the 30 day limit. These allegations show Plaintiffs did not exhaust the administrative remedy, and the fault does not lie with WDOC staff.[4]

Plaintiffs' Rule 60(b)(3) misrepresentation or misconduct argument thus fails because Defendants' failure to exhaust argument was meritorious. Making a correct argument is neither a misrepresentation nor misconduct. Accordingly, the motion for relief or reconsideration as to dismissal for failure to exhaust is denied.

  B. *Failure to Plausibly Allege Elements of the Federal Claims*

Although the Court could have stopped with the exhaustion analysis, the Court went on to address the merits of Plaintiffs' federal claims. They now seek reconsideration as to some of those claims.

  1. *First Amendment Retaliation*

Plaintiffs argue their First Amendment retaliation claim against Martinez-Ellis is plausible, and the Court erred in finding they alleged only a trivial or de minimis injury for this claim. Again, this is an argument that Plaintiffs could have made in a response to the motions to dismiss, and the Court could stop there.

This argument also fails on the merits. Plaintiffs quote from *Poole v. County of Otero,* 271 F.3d 955 (10th Cir. 2001), *abrogated on other grounds by Hartman v. Moore,* 547 U.S. 250 (2006):

> Therefore, the injury need not actually have deterred Mr. Poole from filing this lawsuit. *Cf Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("'[A] retaliation claim may assert an injury no more tangible than a chilling effect of First Amendment rights."); *Bloch*, 156 F.3d at 679 (noting that injuries such as emotional distress are compensable under 1983).

---

[4] As for exhaustion of Plaintiffs' claims regarding the inaccuracy of their medical files generally and Defendant Ross's denial of access to the grievance process, Plaintiffs do not argue for reconsideration. The Court sees no error.

*Poole*, at 960, citing *Bloch v. Ribar*, 156 F.3d 673, 679 (6th Cir. 1998) (discussing compensable injury under 1983).

ECF 50 at 5.

But the October 20 Order does not even note the fact that Plaintiffs were not deterred from filing this lawsuit as a mark against the retaliation claim. The order states:

> The First Amendment retaliation claim against Martinez-Ellis requires Plaintiffs to plausibly allege facts to support among other things "that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir. 2007). "[T]rivial or de minimis injury will not support" the claim. *Id.* Plaintiffs allege there was a risk that healthcare providers could have relied on the wrong injection date, and that they suffered headaches, indigestion, and the like from the stress of discovering Martinez allegedly intentionally falsified the injection date. But they do not allege any actual injury, and their physical complaints are de minimis. They do not plausibly allege First Amendment retaliation against Martinez-Ellis.

Nonetheless, relying on *Poole*, *Bloch* and a string-cite of other cases (ECF 50 at 5), Plaintiffs point to their alleged psychological ailments, which the October 20 Order did not expressly address: "severe emotional distress, mental anguish, excessive and unwarranted stress, anxiety, depression, insomnia, impaired sleeping, irritability, dyspepsia, shock, fright and terror." ECF 33 ¶ 135.

The reason the Court did not expressly address the alleged psychological ailments is that they are not actionable for compensatory damages under the PLRA. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a … prison … for mental or emotional injury suffered while in custody without a prior showing of physical injury," in relevant part). Prisoners thus cannot bring an action under § 1983 for compensatory damages for emotional or psychological injuries unless they also have a

8

"prior showing of physical injury." *Searles v. Van Bebber,* 251 F.3d 869, 876 (10th Cir. 2001) ("The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional"). Mr. Bird's reply in support of his other pending motion reflects that he is already aware of this restriction. ECF 59. Here, Plaintiffs seek only compensatory and punitive damages, and make a residual request for "all other relief that is appropriate under the circumstances." ECF 33 at 41.

Minor physical symptoms do not suffice to avoid this statutory limitation. *See, e.g., Moore v. Arguello,* 2014 WL 4115915, at *3 (D. Colo. Aug. 21, 2014) ("mental anguish and pain, distress, and headaches" are insufficient). *Moore* cites several circuit cases holding that weight loss, appetite loss, insomnia, and depression are also insufficient. *Id.* (citing *Davis v. District of Columbia,* 158 F.3d 1342, 1349 (D.C. Cir. 1998); *Pearson v. Welborn,* 471 F.3d 732, 744 (7th Cir. 2006); and *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005)). *Poole, Bloch*, and Plaintiffs' string-cited cases either (a) do not regard prisoners, (b) note a prisoner's claim was limited to nominal and punitive damages, (c) dismiss all damages claims for other reasons and thus did not reach this issue, or (d) predate the 1996 PLRA amendment in 1996 to include the physical injury requirement.

Thus, Plaintiffs cannot state a claim for compensatory damages based on psychological or emotional injuries with only minor physical symptoms. This leaves their request for punitive damages and residual request for "other relief." Section 1997e(e) does not preclude nominal damages, and if awarded this would allow a jury to still consider punitive damages. *Searles,* 251 F.3d at 878. Section 1997e(e) also does not preclude declaratory relief. *Perkins v. Kan. Dep't of Corr.,* 165 F.3d 803, 808 (10th Cir. 1999). It

is unclear whether liberal construction requires implying such requests in Plaintiffs' residual relief category. In *Perkins*, the prisoner's allegations "demonstrate[d] a clear desire for injunctive relief," thus liberal construction required the court to consider such a request as implied. 165 F.3d at 808. In other cases, such as *McKillip v. Norwood,* No. 22-3100, 2022 WL 17069582 (10th Cir. Nov. 17, 2022) (unofficially published), the court affirmed dismissal for lack of physical injury and ongoing conditions without discussing nominal damages. *Id.* at *2.

Even implying a request for nominal damages or declaratory relief for Plaintiffs, the claim would still not survive. The Court sees no error in its October 20 conclusion that Plaintiffs' allegations do not plausibly support that Martinez-Ellis acted with the requisite intent. Plaintiffs allege she falsified the date in retaliation for Bird's April 9, 2021 grievance requesting a copy of his consent form, but the same allegations equally support that the grievance brought to her attention that she had not yet completed the forms and had to approximate the date due to lack of memory or documentation from three weeks prior. This would be mere negligence, which does not suffice to show she was substantially motivated by retaliation for the April 9, 2021 grievances. These allegations fail to "nudge [Plaintiffs'] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

As for declaratory relief, like injunctive relief, this would require Plaintiffs to allege "the constitutional violation is ongoing, or [they have] a 'good chance' of suffering the same injury in the future." *McKillip,* 2022 WL 17069582, at *2 (citing *Green v. Branson,* 108 F.3d 1296, 1300 (10th Cir. 1997)). But Plaintiffs allege Martinez-Ellis is no longer

with Corizon at WMCI, and they do not otherwise allege any facts suggesting a good chance of repetition. In short, Plaintiffs cannot state a retaliation claim for any kind of relief. The motion to reconsider Count I is denied.

### 2. *Fourteenth Amendment Substantive Due Process Claims*

Plaintiffs argue error in dismissing the Fourteenth Amendment substantive due process claim (Count II). This claim alleges that as inmates of a state prison, Plaintiffs have a Fourteenth Amendment right to accurate medical records. They allege Martinez-Ellis violated this right in falsifying their vaccination date, and other Corizon employees violated it in not keeping their medical records accurate in general.

"One strand of the substantive due process doctrine protects an individual's fundamental liberty interest, while the other protects against the exercise of governmental power that shocks the conscience." *Carrier v. Lundstedt,* No. 13-CV-02933-PAB-CBS, 2014 WL 8103198, at *5 (D. Colo. Dec. 22, 2014), *report and rec. adopted,* 2015 WL 1041835 (D. Colo. Mar. 4, 2015) (quoting *Seegmiller v. Laverkin City,* 528 F.3d 762, 767 (10th Cir. 2008)). Here, Plaintiffs rely on the second strand. The claim requires "an abuse of executive power so clearly unjustified by any legitimate objective of [the governmental actor] … as to be barred by the Fourteenth Amendment." *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 840 (1998). The Court has "always been reluctant to expand the concept of substantive due process." *Id.* at 842. It is "intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." *Id.* at 845.

"Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense, … thereby recognizing the point made in different circumstances by Chief Justice Marshall, that it is a constitution we are expounding." *Lewis*, 523 U.S. at 846 (internal quotation marks omitted). "[T]he cognizable level of executive abuse of power [actionable for substantive due process is] that which shocks the conscience." *Id.*

> [C]onscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability. Thus, we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.

*Id.* at 848. Negligence is categorically below substantive due process protection. *Id.* at 849. "It is … behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.*

Plaintiffs argue that Martinez-Ellis' falsification of the vaccination date does shock the conscience, or at least that the Court improperly made a factual finding in concluding otherwise. They point to an affidavit of Angela Ahrens they attach to their motion. ECF 51-2. Ms. Ahrens states that she is a registered nurse in the State of Michigan. She offers opinions that Plaintiffs had not consented to the Janssen vaccine, that the false or inaccurate date on their consent forms is a serious breach of the health care provider's duties, and that such put Plaintiffs at risk of serious injury or death.

This is not persuasive for several reasons. First, these are matters that Plaintiffs could have raised in or attached to a response but chose not to file one. It is too late now. Moreover, even if the Court were to consider Ms. Ahrens' opinions, the risk of serious injury or death she identifies from the inaccurate vaccination dates is only that *if* Plaintiffs developed complications from the vaccine, they could have been harmed by the inaccurate date. ECF 51-2 at 3 ¶ 6. She does not contend that Plaintiffs have suffered any such complications. It has been almost two years now. In addition, a serious breach of duty does not equate to conduct shocking the conscience. Again, negligence (*i.e.,* medical malpractice) is below substantive due process protection. *Lewis,* 523 U.S. at 849.

As for Plaintiffs' assertion that the Court improperly made a factual finding, "[w]hether specific conduct shocks the conscience is a question of law for the court." *Carrier*, 2014 WL 8103198, at *5 (internal citation omitted, citing *Graves v. Thomas,* 450 F.3d 1215, 1220 (10th Cir. 2006)). The Court did not make a factual finding, but rather applied the law to Plaintiffs' fact allegations to hold that they do not meet this standard. The Court sees no error in that conclusion. The only deliberate conduct Plaintiffs allege for this claim is Martinez-Ellis's falsification of the vaccination dates when three weeks had passed without Plaintiffs reporting any complications. And as noted above, the allegations equally support that she acted only negligently in doing so.

Either way, falsely completing the vaccination dates was not "so brutal and offensive as to not comport with traditional ideas of fair play and decency." *Lewis,* 523 U.S. at 847. For instance, in the context of a Fourth Amendment claim alleging a threat, a healthcare provider's allegedly pointing the finger at the prisoner and blaming him for her

mistake in administering an incorrect medication did not shock the conscience. *Jordan v. Karas Health Care,* Civil No. 5:16-cv-5161, 2017 WL 3405551, at *5 (W.D. Ark. July 19, 2017). *Cf., Green v. Beck,* 5:10-CT-3003-D, 2011 WL 5190591, at *4 (E.D.N.C. Oct. 31, 2011), *aff'd in part, vacated in part on other grounds*, 539 F. App'x 78 (4th Cir. 2013) (in the context of an Eighth Amendment claim, being "almost given" another inmate's medication in retaliation did not shock the conscience).

Plaintiffs highlight the federal statute requiring informed consent before administering an "emergency use authorization" drug. 21 U.S.C. § 360bbb-3(e)(1)(A)(ii). But this statute applies only to the Secretary of Health and Human Services. It also does not provide a private cause of action. *See, e.g., Bridges v. Houston Methodist Hosp.,* 543 F. Supp. 3d 525, 527 (S.D. Tex. 2021), *aff'd on other grounds sub nom. Bridges v. Methodist Hosp.,* No. 21-20311, 2022 WL 2116213 (5th Cir. June 13, 2022); *Johnson v. Brown,* 567 F. Supp. 3d 1230, 1256 (D. Or. 2021). The statute does not imply that healthcare providers shock the conscience when they falsify an EUA vaccination date.

Plaintiffs also point out that people have died after receiving the Janssen vaccine, citing ¶¶ 64-70 of the amended complaint. Here they allege the following regarding the Janssen vaccine:

> [D]ue to information acquired from news media reports prior to March 10, 2021, the Plaintiffs were generally aware of blood clot issues associated with the Janssen Vaccine and were opposed to the Janssen Vaccine because of its serious safety issues.
> In fact, as of February 27, 2021, the FDA acknowledged:
> - Thromboembolic events:
>   - Deep vein thrombosis: 6 events (2 serious; 5 within 28 days of vaccination) vs. 2 events (1 serious; 2 within 28 days of vaccination).

14

- Pulmonary embolism: 4 events (3 serious; 2 within 28 days of vaccination) vs. 1 event (serious and within 28 days of vaccination).
- Transverse sinus thrombosis: 1 event (serious and within 28 days of vaccination) vs. 0.
- Seizures: 4 events (1 serious; 4 within 28 days of vaccination) vs. 1 event (0 serious and 0 within 28 days following vaccination).
- Tinnitus: 6 events (0 serious; 6 within 28 days of vaccination, including 3 within 2 days of vaccination) vs. 0.

Plaintiffs do not explain why they believe seizures or tinnitus relate to blood clots. More importantly, Plaintiffs do not allege any facts suggesting that Martinez-Ellis was aware at the time of the alleged news or the February 27, 2021 FDA publication. Plaintiffs allege only that they themselves were aware of it then.

These allegations also fail because the February 27, 2021 FDA document on which Plaintiffs rely is actually the FDA's "Decision Memorandum" (hereafter, the "Janssen EUA") *authorizing* the Janssen vaccine for emergency use, not pausing it.[5] https://www.fda.gov/media/146338/download, available from https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine. Indeed, later in the motion, Plaintiffs recognize this fact. ECF 50 at 8 ¶ 45. Concerns regarding the Janssen vaccine's blood clot issues do not appear on the FDA webpage until an April 23, 2021 letter amending the EUA. *See* https://www.fda.gov/media/147865/download. This was well after Martinez-Ellis

---

[5] The Court can take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." F.R.E. 201(b), (d). This is true of publicly available documents on an agency's webpage. *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1212–13 (10th Cir. 2012). Thus, the Court considers the documents on the FDA's webpage and does not convert the motions to dismiss to summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

allegedly falsified the vaccination dates.[6] Accordingly, Plaintiffs' allegations of media news and FDA disclosures do not show Martinez-Ellis's conduct shocks the conscience.

In short, there is no error in dismissing Count II for failure to state a claim.

### 3. *Supervisory and Entity Liability Claims*

Plaintiffs' claims for supervisory and entity liability (Counts XII, XIII and XIV) against respectively Corizon, Dr. Johnson, Ms. Koch, Director Shannon and Warden Pacheco are apparently for substantive due process violations. Plaintiffs argue they plausibly alleged deliberate indifference to support these claims. They again point to the Janssen vaccine only having an EUA and the federal statute that is applicable only to the Secretary of HHS.

The Court sees no error in the October 20 dismissal of the claims against the supervisory Defendants; they either did not allege personal participation or did not plausibly allege the requisite state of mind. If these claims assert substantive due process violations, the alleged conduct does not shock the conscience for the same reasons the Court held with respect to Martinez-Ellis.

If the supervisory claims regard the Eighth Amendment, the Court sees no error in its conclusion that these Defendants did not act with deliberate indifference to an excessive risk. Plaintiffs do not allege a sufficiently serious deprivation under the Eighth Amendment. To be "sufficiently serious," the deprivation must concern a basic human

---

[6] In addition, the comparisons that Plaintiffs allege as to each serious reaction are between the Janssen vaccine and a placebo. *See, e.g.,* Janssen EUA at 7, 49-52. They are not comparisons to the Moderna or Pfizer vaccines, to which Plaintiffs consented. Thus, even if Plaintiffs alleged that Martinez-Ellis was aware of media news or the FDA's publications at the time, they still do not allege that she was aware on April 10, 2021 of greater risk in the Janssen vaccine *versus* the vaccines to which Plaintiffs consented.

need.  *Wilson v. Seiter*, 501 U.S. 294, 304–305 (1991).  These include food, shelter, clothing, medical care and reasonable safety.  *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).  There's a difference between providing medical care and maintaining accurate records thereof.  Plaintiffs do not cite – and the Court has not found – any legal support for accurate medical records as a basic human necessity within the Eighth Amendment.

Plaintiffs also point to their allegation of a policy to not train, supervise, *etc.,* medical staff to keep accurate medical records and to refuse to correct inaccuracies.  ECF 33 ¶ 174.  Plaintiffs argue these allegations infer deliberate indifference, citing *Simpson v. Univ. of Colo. Boulder,* 500 F.3d 1170, 1178-79 (10th Cir. 2007) and *City of Canton v. Harris,* 489 U.S. 378 (1989)).

*Simpson* and *Canton* hold that "a municipality may be liable under § 1983 for an officer's constitutional violation if the violation was the result of inadequate police training and the municipality's failure to train the officer amounted to deliberate indifference to the rights of those with whom [the untrained employees] come into contact."  *Simpson*, 500 F.3d at 1178 (internal citations omitted, citing *Canton*).[7]

But the municipality's deliberate indifference must be the moving force behind an employee's constitutional violation; it must be the actual cause of the individual officer's alleged constitutional violation.  *Canton,* 489 U.S. at 389, 391.  Therefore, entities cannot be liable under § 1983 if their employees did not violate the constitution.  *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154 (10th Cir. 2001).  The October 20 Order concluded that

---

[7] This standard does not apply to the supervisory Defendants.  "Deliberate indifference ... is defined differently for Eighth Amendment and municipal liability purposes."  *George ex rel. Bradshaw v. Beaver Cnty.*, 32 F.4th 1246, 1258 n.3 (10th Cir. 2022).

Plaintiffs' claims against Corizon's employees fail to plausibly allege that any of them violated Plaintiffs' constitutional rights, and the Court sees no error therein. The October 20 Order omitted discussion of Corizon on these claims for that reason. The claims against Corizon fail for lack of a constitutional violation by any of its employees.

In short, the Court sees no error in the dismissal of the entity and supervisory claims.

Finally, Plaintiffs' motion does not point to any intervening change of the law, evidence that was previously unavailable, or manifest injustice in the dismissal of their claims. Nor does the Court see any. Their motion accordingly fails to show reconsideration is warranted on any basis.

IV.   Conclusion

For the reasons stated above, the Court DENIES Plaintiffs' motion for reconsideration and relief from the judgment (ECF 50).

Dated this 8th day of December, 2022.

*[signature: Nancy D. Freudenthal]*

NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE